IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JUDITH BAILEY,** | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:21-cv-01629-JRR |
| **MARYLAND DEPARTMENT OF HUMAN SERVICES,** | * | |
| | * | |
| *Defendant.* | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

*Pro se* Plaintiff Judith Bailey filed this action against Defendant Maryland Department of Human Services, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (ECF No. 1.) Pending before the court is Defendant's Motion for Summary Judgment. (ECF No. 90; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

**I.   BACKGROUND**

On or around September 25, 2019, Assistant Director Patricia Anyaegbunam, an African American woman, interviewed Plaintiff, an African American woman, for an Agency Procurement Specialist II position with Defendant's Howard County Department of Human Services (the "Department").[1]   (ECF No. 90-2 ¶¶ 2, 7; ECF No. 30 at p. 19.)  The Agency Procurement Specialist II position was previously held by an African American man. (ECF No. 90-2 ¶ 11.) Ms. Anyaegbunam selected Plaintiff for the position and offered her the position on December 11,

---

[1] Defendant is a principal department of the State government, and the Department is the local department of Defendant in Howard County. MD. CODE ANN., HUM. SERVS. §§ 2-201, 3-201.

2019.  *Id.* ¶¶ 7–8.  On or around January 2, 2020, Plaintiff began working with the Department. (ECF No. 90-2 ¶ 12; ECF No. 30 at p. 20.)  Throughout her employment, Plaintiff was supervised by Ms. Anyaegbunam.  (ECF No. 90-2 ¶ 9; ECF No. 97 at p. 1.)  Plaintiff was a probationary employee for the first six months of her employment,[2] which Defendant later extended to a full year.  (ECF No. 90-3 at 98:3–13.)

Defendant contends that Plaintiff "struggled in her work performance and had challenges completing her work assignments."  (ECF No. 90-1 at p. 3.)  Ms. Anyaegbunam purportedly reduced Plaintiff's workload to permit her additional time to complete tasks and scheduled weekly one-on-one meetings to answer questions.  (ECF No. 90-2 ¶ 15.)  At Plaintiff's 90-day performance evaluation on April 1, 2020, Ms. Anyaegbunam discussed issues with Plaintiff's performance, including improper reporting of contract monitoring, delay in responding to contract bids, and disorganization and timeliness concerns.  (ECF No. 90-5 at p. 3.)  Ms. Anyaegbunam again counseled Plaintiff on procurement errors via email on May 11, 2020.  (ECF No. 90-6.)  From March 2020 through May 2020, Ms. Anyaegbunam repeatedly contacted Plaintiff about issues with her timekeeping.  (ECF Nos. 90-7, 90-12.)  At Plaintiff's performance evaluation on June 25, 2020, Ms. Anyaegbunam rated Plaintiff's work as unsatisfactory and identified tasks for Plaintiff to complete before her next evaluation.  (ECF No. 90-14.)  As a result, Plaintiff was put on a Performance Improvement Plan.  (ECF No. 90-15.)  At the end of Plaintiff's initial probation period on July 1, 2020, Plaintiff's probation was extended to December 31, 2020, in light of the purported performance issues.  (ECF No. 90-16.)  That same day, Ms. Anyaegbunam issued a counseling memorandum to Plaintiff regarding additional performance issues and advised Plaintiff on what she needed to do to meet expectations.  (ECF No. 90-17.)  Finally, on July 9, 2020, Ms.

---

[2] Each employee in the State Personnel Management System "is required to complete a 6-month probationary period."  MD. CODE ANN., STATE PERS. & PENS. § 7-402.

Anyaegbunam recommended that Plaintiff's employment be terminated for the aforementioned issues. (ECF No. 90-18.) Defendant notified Plaintiff of her termination on July 14, 2020, which Plaintiff appealed. (ECF No. 90-2 ¶ 29; ECF No. 90-19.) Plaintiff was terminated effective July 28, 2020. (ECF No. 90-19.) The Agency Procurement Specialist II position was then filled by an African American woman. *Id.* ¶ 31.

While Plaintiff does not dispute that she was repeatedly counseled on issues related to her performance, Plaintiff contends that her performance issues arose because Ms. Anyaegbunam prevented Plaintiff "from accessing systems that were crucial to do her job." (ECF No. 97 at p. 1.) In early February 2020, Ms. Anyaegbunam asked Plaintiff in a passing conversation, "Did you have a large afro during the interview?" *Id.* Ms. Anyaegbunam wears her own hair in an afro style. (ECF No. 90-2 ¶ 13.) Thereafter, Plaintiff contends that Ms. Anyaegbunam "target[ed]" her, "falsif[ied]" her employment record, "with[eld] access to critical resources," and "created an intense and hostile work environment" for Plaintiff. (ECF No. 97 p. 1.)

In particular, Plaintiff states that Ms. Anyaegbunam refused to provide her with a physical copy of a relevant section of the Code of Maryland Regulations ("COMAR") relating to her work. *Id.* Plaintiff also contends she was not given access to the state's financial system or full access to a procurement tracking system in a timely manner—both of which affected her ability to do her job. *Id.* at 1–2. Plaintiff further alleges that Ms. Anyaegbunam did not immediately notify her that her timesheets were incorrect and, when she did, she provided "confus[ing]" instructions on how to correct them. *Id.* at p. 6. Finally, Plaintiff contends that Ms. Anyaegbunam was hostile toward her by taking the lead at a meeting that Plaintiff was directing, berating Plaintiff when she expressed an opinion in a group email, and commenting on Plaintiff trying to control her facial expressions when she became emotional. *Id.* at p. 3–4. Ultimately, Plaintiff asserts that Ms.

Anyaegbunam's reasons for terminating her employment were pretextual because she "intended to hire another woman with a different racial appearance." (ECF No. 30 at p. 21.) Plaintiff identifies a white man in informational technology as a comparator. Plaintiff states that Ms. Anyaegbunam berated Plaintiff about an email she sent but then "sent a polite email to the white male employee" who had sent an email expressing the same sentiment Plaintiff had expressed. (ECF No. 30 at p. 20.) Plaintiff does not allege that the white male employee was supervised by Ms. Anyaegbunam. (ECF No. 90-3 at 70:3–11.)

On April 5, 2021, Plaintiff filed her charge of discrimination with the EEOC, alleging discrimination based on race and sex, and stating that she "was told [she] was discharged for performance issues," but believed she was "discriminated against with respect to suspension and discharge based on [her] race (Black) and sex (female) in violation of Title VII." (ECF No. 30 at p. 24.) Plaintiff received her dismissal and Notice of Right to Sue that same day. *Id.* at p. 25.

On July 1, 2021, Plaintiff filed action in this court, alleging violations of Title VII. (ECF No. 1.) On April 25, 2022, Plaintiff filed a motion for leave to file an amended complaint, which Defendant did not oppose. (ECF Nos. 23, 26.) The court granted Plaintiff's motion and the Amended Complaint (ECF No. 30; the "Complaint")—the operative complaint in this action—was filed on June 8, 2022. (ECF No. 29.) Defendant now moves for summary judgment, contending that it is entitled to judgment as a matter of law on all of Plaintiff's claims. (ECF No. 90.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect

the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).  "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).  "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also*

5

*Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

### III. ANALYSIS

As an initial matter, the court is mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.* (citations omitted).

#### A. Hostile Work Environment

Defendant first argues that it is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim because she failed to exhaust her administrative remedies and because she has failed to produce any evidence to support the claim.[3] (ECF No. 90-1 at p. 13–14.)

"To demonstrate sexual harassment and/or a racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or

---

[3] The court concludes that Defendant is entitled to judgment on Plaintiff's hostile work environment claim because she has failed to demonstrate a *prima facie* case under the law. Accordingly, the court need not consider whether Plaintiff's hostile work environment claim was administratively exhausted. However, the court notes, but does not conclude, that Defendant's administrative exhaustion argument may be vulnerable as untimely, because it was raised for the first time at the summary judgment phase; it was not raised in Defendant's motion to dismiss or answer. *Cf. Fort Bend County v. Davis*, 587 U.S. ——, 139 S. Ct. 1843, 1846 (2019) ("Prerequisites to suit like Title VII's charge-filing instruction are not of that character; they are properly ranked among the array of claim-processing rules that must be timely raised to come into play."); *Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2023 WL 4567976, at *12 (D. Md. June 27, 2023) (considering whether the plaintiff was prejudiced where defendants did not raise failure to exhaust administrative remedies as an affirmative defense in the answer and where "the failure to raise an affirmative defense in the appropriate pleading, generally results in the loss of that defense" (citations omitted)).

race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). "When racial animus in the workplace creates a hostile work environment, requiring an affected employee to work in it amounts to intentional racial discrimination by the employer and is actionable under Title VII." *McIver*, 42 F.4th at 407. "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Defendant argues that Plaintiff has failed to offer any evidence to support her claim that her supervisor's purported unwelcome conduct was based on her race or sex, or that her supervisor's conduct was sufficiently severe or pervasive as to alter her working conditions.

       1. ***Conduct Based on Race and/or Sex***

As an initial matter, Plaintiff offers no argument or support that Ms. Anyaegbunam's purported unwelcome conduct was based on sex. To the extent she intended her hostile work environment claim to be based on her sex, Plaintiff has thus failed to make the necessary *prima facie* showing of unwelcome conduct based on her sex.

Plaintiff's racially hostile work environment claim faces the same fate. "To establish that harassment was based on race, [the plaintiff] must show that but for her race, she would not have been the victim of the alleged discrimination." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 409 (4th Cir. 2022) (citations omitted). The court "may infer that harassment is based on race when the plaintiff suffered harassment more often than others of different races or suffered harassment of a kind likely to be motivated by race. But a plaintiff cannot rely on her own

7

'conjecture' to impute a racial character to what appears to be neutral harassment." *Id.* (citations omitted).

Here, Plaintiff alleges that her supervisor, an African American woman, harassed Plaintiff because Plaintiff was an African American woman. The basis for that allegation is that Ms. Anyaegbunam asked Plaintiff if she wore her hair in an afro style at her interview—the interview Ms. Anyaegbunam conducted and, after which, selected Plaintiff for the position. It is unclear how such a comment indicates a racial animus beyond Plaintiff's pure conjecture. *See McIver*, 42 F.4th at 409, *supra*. The only other information Plaintiff offers is entirely subjective—that after the question regarding her hairstyle, Ms. Anyaegbunam's "outward demeanor and communication with [Plaintiff] changed so drastically." (ECF No. 30 at p. 20.) This allegation is conclusory and fails to set forth any facts tending to demonstrate that or how Ms. Anyaegbunam's demeanor and communication changed, and how that related to Plaintiff's race. Plaintiff's sole allegation is further undermined by the fact that Ms. Anyaegbunam is a member of the same protected class as Plaintiff and also wears an afro hairstyle. *See Demesme v. Montgomery Cnty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999), *aff'd,* 208 F.3d 208 (4th Cir. 2000) ("The fact that the decision makers were of the same protected class suggests no discriminatory motivation."). Plaintiff has failed to generate a dispute of material fact on this issue; no evidence has been presented on which a reasonable factfinder could rely to conclude that Ms. Anyaegbunam's purported unwelcome conduct would not have occurred but for Plaintiff's race or sex.

   2. ***Severe or Pervasive Conduct***

Even were the court to conclude that Ms. Anyaegbunam's purported unwelcome conduct was based on Plaintiff's race, which the court does not conclude, Plaintiff has still failed to show

facts in support of her claim that the conduct was sufficiently severe or pervasive so as to alter the terms or conditions of her employment.

To prevail on a race-based hostile work environment claim, the requisite unwelcome conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). "The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'" *McIver*, 42 F.4th at 407 (citing *Harris*, 510 U.S. at 21–22). A plaintiff must fulfill the subjective and objective components described above, which is to say "the employee must both personally and reasonably believe that the conduct rises to the level of a hostile environment." *Id.* The court must consider "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris*, 510 U.S. at 23). "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. "The bar for demonstrating conduct was objectively severe or pervasive is a high one." *Brown*, 2022 WL 17336572, at *9. This court has previously observed:

> "To be sure, the severe and pervasive element sets a high bar, such that the law tolerates a level of poor conduct by an employer that is at odds with the courtesy and respect that an employee might not unreasonably expect. As such, '[R]ude treatment by [coworkers],

9

> callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.'"

*Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 254 (D. Md. 2023) (quoting *Milo v. CyberCore Techs., Inc.*, No. RDB-18-3145, 2019 WL 4447400, *5 (D. Md. Sep. 17, 2019)).

Ms. Anyaegbunam's purported pattern of conduct includes criticism of an email sent by Plaintiff, a comment about Plaintiff's efforts to control her facial expressions, leading a meeting that Plaintiff was hosting, and, most substantially, attempting, in effect, to sabotage Plaintiff's ability to do her job. (ECF No. 30 at p. 20–22.) The first three allegations are facially insufficient to meet the high bar to show objectively severe or pervasive conduct, and, notably, Plaintiff does not allege that any conduct affected the terms or conditions of her employment. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315, *supra*. The court also finds that Plaintiff's contention that Ms. Anyaegbunam attempted to interfere with her ability to perform her job is similarly not sufficiently severe or pervasive to alter the terms or conditions of her employment. While such a contention may, on some set of facts, be sufficient, it is not the case here where the allegations supporting the accusation are so minimal—Ms. Anyaegbunam failed to give Plaintiff a physical copy of a publicly-available document that is accessible online; Plaintiff's access to two of Defendant's systems was delayed (especially where it is not shown that Ms. Anyaegbunam was solely responsible for that delay); and Ms. Anyaegbunam failed to give Plaintiff timely feedback on how to complete her timesheet. These allegations simply do not amount to such extreme conduct as to affect the terms or conditions of employment. *See id.*

Plaintiff has thus failed to show facts that Ms. Anyaegbunam's conduct occurred because of Plaintiff's race and/or sex, and that the purported conduct was sufficiently severe or pervasive as to alter the terms or conditions of her employment, as required by law. Accordingly, there is

no genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

### 3. Title VII Race and Sex Discrimination

Defendant further contends that Plaintiff has failed to show that Defendant discriminated against her based on her race and sex. (ECF No. 90-1 at p. 18–28.) Specifically, Defendant asserts that Plaintiff, relying on circumstantial evidence of discrimination, cannot show that her job performance was satisfactory or that similarly-situated employees outside of her protected class received different treatment.[4] *Id.* at p. 19–24.

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). "To satisfy ordinary principles of proof, [a plaintiff] must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Cole v. Fam. Dollar Stores*

---

[4] Defendant also contends that Plaintiff's claims must fail because she cannot prove that Defendant's legitimate, non-discriminatory reason for her termination was then, or is now, pretextual. (ECF No. 90-1 at p. 25.) Because the court concludes Plaintiff has failed to meet her initial burden to show a *prima facie* case of race and/or sex discrimination, it need not address Defendant's pretext argument.

*of Md., Inc.*, 811 Fed. Appx. 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, as is the case here, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* standard. *McDonnell Douglas Corp.*, 411 U.S. at 802. Pursuant to the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The "[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the *prima facie* case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citations omitted).

"[T]he elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the employment action]." *McDonnell Douglas Corp.*, 411 U.S. at 802. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254–55). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons

'were not its true reasons, but were a pretext for discrimination.'" *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citations omitted). "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253).

"An employer is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995). Further, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992)).

Here, there is no dispute that Plaintiff is a member of a protected class and that she was subject to the adverse employment action of termination. Instead, Defendant challenges the remaining elements: that her job performance was satisfactory and that she was subjected to different treatment than similarly situated employees outside of her protected class. (ECF No. 90-1 at p. 18–24.) *See Coleman*, 626 F.3d at 190, *supra*.

In analyzing satisfactory job performance, it is the "perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). The plaintiff is not required "to show that he was a perfect or model employee." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). "Rather, a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations." *Id.* There is no dispute that Ms. Anyaegbunam repeatedly counseled Plaintiff on issues with her job performance prior to her termination. (ECF Nos. 90-4, 90-5, 90-6, 90-7, 90-

10, 90-11, 90-12, 90-14, 90-15, 90-16, 90-17.) The dispute is instead based on Plaintiff's allegation that the reason she was failing to comply with Defendant's expectations was due to Ms. Anyaegbunam's purported interference efforts. (ECF No. 30 at p. 20.) However, regardless of whether there is a genuine dispute as to Plaintiff's job performance, Plaintiff's race and sex discrimination claims still fail because she has not identified a valid comparator.

"[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010)). This is simply not the case here. Plaintiff has identified a white man in informational technology as a comparator because he responded to an email in a manner similar to Plaintiff's email that had been subject to criticism. (ECF No. 30 at p. 20.) Plaintiff contends that while she was "berat[ed]" for her response, Ms. Anyaegbunam sent the white man "a polite email." *Id.* Plaintiff does not allege Ms. Anyaegbunam was the white man's supervisor, that Plaintiff and the white man were subject to the same standards, or even that there were no differentiating circumstances. *See Haynes*, 922 F.3d at 223–24, *supra*. Accordingly, to the extent Plaintiff alleges she was discriminated against based on her race or sex, she has failed to allege the requisite facts to state a *prima facie* claim of race or sex discrimination. There is no dispute of material fact on these elements, and Defendant is entitled to judgment as a matter of law on Plaintiff's claim of race and sex discrimination.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 90) will be GRANTED.

March 8, 2024

/S/
_____
Julie R. Rubin
United States District Judge